IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
CIVIL COURT DEPARTMENT

| | |
|---|---|
| COURTNEY BEVAN f/k/a Courtney Amack, an individual, ) ) ) | |
| Plaintiff, ) ) | |
| vs. ) ) | Civil Action No.: _____ |
| BUTLER & ASSOCIATES, P.A., ) | |
| **Serve:** **Todd B. Butler** ) | |
| **Resident Agent** ) | |
| **3706 S. Topeka Blvd., Suite 300** ) | |
| **Topeka, Kansas 66609** ) ) | |
| STORMONT-VAIL HEALTHCARE, INC., ) | |
| a Kansas corporation d/b/a Stormont-Vail ) | |
| Regional Healthcare, ) | |
| **Serve:** **Jim Kilmartin** ) | |
| **Resident Agent** ) | |
| **1500 SW 10th Ave.** ) | |
| **Topeka, Kansas 66604** ) ) | |
| and STORMONT-VAIL, INC., ) | |
| a Kansas corporation d/b/a Stormont-Vail ) | |
| Regional Healthcare, ) | |
| **Serve:** **Kenneth Stone** ) | |
| **Resident Agent** ) | |
| **1500 SW 10th Ave.** ) | |
| **Topeka, Kansas 66604** ) ) | |
| Defendants. ) ) | |
| **Also serving notice to (K.S.A. § 50-634):** ) | |
| **Office of the Attorney General** ) | |
| **Consumer Protection Division** ) | Jury Demanded |
| **120 SW 10th Ave, 2nd Floor** ) | |
| **Topeka, Kansas 66612-1597** ) | |

**COMPLAINT**

Plaintiff Courtney Bevan f/k/a/ Courtney Amack, for her Complaint against the defendants above-named, states and alleges as follows:

1.      This case seeks civil penalties and damages based on the defendants' knowing, repeated violations of the federal Fair Debt Collection Practices Act (15 U.S.C. § 1692, *et seq.*) and of the Kansas Consumer Protection Act (K.S.A. § 50-623, *et seq.*), as well as for the defendant's tortious conduct in the State of Kansas, through their joint actions and/or through the actions of the defendant law firm.

2.      The primary course of events involves the wrongful conduct of the defendant law firm through its various authorized agent attorneys, in repeatedly mishandling an alleged collection claim and abusing the legal process through the Chapter 61 Court of Limited Actions in Shawnee County, Kansas, to attempt to collect an alleged debt against the plaintiff.  The allegations herein detail the wrongful actions of the defendant law firm.

3.      As a direct result of its violations of the laws designed to protect consumers like the plaintiff from unfair, deceptive, unconscionable, and misleading practices and communications, the defendant is liable to the plaintiff and owes the plaintiff civil penalties in excess of $250,000, plus actual damages incurred, plus plaintiffs' attorney's fees incurred in pursuing these claims, and other damages as allowed by law.

**Parties, Jurisdiction and Venue**

4.      Plaintiff Courtney Bevan is an individual Kansas resident, currently living in Chapman, Kansas.

5.      Defendant Butler & Associates, P.A. is a Kansas professional association with its principal place of business located in Topeka, Kansas.  Defendant is listed as active and in good standing with the Kansas Secretary of State's Office.  Defendant may be served with process by

2

delivering a summons and a copy of this Complaint to its officers or managing employee at its principal place of business, and/or to its registered agent as listed above in the caption, or as the defendant may otherwise be found and served pursuant to Kansas law and the Federal Rules of Civil Procedure.

6.      Defendant Stormont-Vail Healthcare, Inc. is a Kansas not-for-profit corporation with its principal place of business located in Topeka, Kansas.  Defendant is listed as active and in good standing with the Kansas Secretary of State's Office.  Defendant may be served with process by delivering a summons and a copy of this Complaint to its officers or managing employee at its principal place of business, and/or to its registered agent as listed above in the caption, or as the defendant may otherwise be found and served pursuant to Kansas law and the Federal Rules of Civil Procedure.

7.      Defendant Stormont-Vail, Inc. is a Kansas corporation with its principal place of business located in Topeka, Kansas.  Defendant is listed as active and in good standing with the Kansas Secretary of State's Office.  Defendant may be served with process by delivering a summons and a copy of this Complaint to its officers or managing employee at its principal place of business, and/or to its registered agent as listed above in the caption, or as the defendant may otherwise be found and served pursuant to Kansas law and the Federal Rules of Civil Procedure.

8.      Either or both of the defendant Stormont-Vail entities, on information and belief, does business as "Stormont-Vail Regional Healthcare."  That d/b/a "entity" is the stated name of a party plaintiff in the two collection lawsuits referenced below, which were filed by the defendant law firm.  The Petition in each lawsuit references the party plaintiff as "Stormont-Vail Regional Healthcare."  There is no listing for such an entity with the Kansas Secretary of State's office, but in reviewing the registered entities and general information about the Stormont-Vail hospital, it is

{3227/01024063.DOCX}

believed that one of the two defendant Stormont-Vail entities named herein was the intended entity plaintiff in the two lawsuits.  For these reasons, such entities are named herein.

9.      The actions complained of herein were carried out and performed by the defendant law firm, which was acting as an agent for its stated principal of "Stormont-Vail Regional Healthcare" which is, as stated above, believed to be one of the Stormont-Vail entities named herein.

10.      Being pursuant to an agency relationship, the named principals are responsible for the wrongful actions of their agent law firm through the doctrine of *respondeat superior*, and/or on information and belief because they either expressly authorized, impliedly authorized, and/or ratified such conduct.

11.      The defendant law firm is itself also liable to the plaintiff for its wrongful actions complained of herein.

12.      The Court has federal question subject matter jurisdiction over these claims, pursuant to 28 U.S.C. § 1331, in relation to the federal statutory violation alleged in Count I herein. The Court has supplemental subject matter jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(a).

13.      Personal jurisdiction over the defendants exists pursuant to Fed. R. Civ. P. 4(h) and K.S.A. §§ 60-303 and 60-304(e) and (f).

14.      Venue is proper before this Court pursuant to 28 U.S.C. § 1391(b)(1) and (2).

## Facts Supporting the Legal Theories

### A.  The Underlying Alleged Debt

15.      The defendant law firm filed two lawsuits against the plaintiff attempting to collect the same alleged debt.  The lawsuits only described the alleged debt as having a principal amount

4

of $1,542.11, and by implication without any further pleading in either lawsuit was allegedly owed to "Stormont-Vail Regional Healthcare," the named plaintiff in each suit.

16.     Also by implication the alleged debt may have been allegedly incurred on December 8, 2006 because pre-judgment interest was asked to run from that date, but the date of the alleged services and debt is not specifically pleaded.

17.     Neither lawsuit provided any other identifying characteristics of the alleged debt, including what services were allegedly provided, confirmation of dates when the alleged services occurred, who specifically had received the alleged services, or other features of the alleged debt.

18.     Plaintiff and, subsequently, her attorney requested additional information from the defendant law firm about the alleged debt, but no further information was provided.  Plaintiff remains unsure of other details about the alleged debt.

### B.   Time Line of Plaintiff's Residences

19.     Plaintiff lived at 8842 Sycamore Lane, Ozwakie, Kansas, but only before she graduated high school in 2001.  Plaintiff has not been employed at that address; it is a house in a wooded area.

20.     Plaintiff married Eric Amack on May 22, 2003.  The couple divorced on December 13, 2014.

21.     When the couple married in 2003, they lived at 108 Allen's Ally in Perry, Kansas.

22.     In 2005, the couple moved to 3644 S.W. Clare Avenue in Topeka, Kansas.  They lived at that address until May 2007.  Plaintiff has not lived at that address other than during that timeframe.

23.     Plaintiff's husband joined the military in May 2007.  He was then transferred to Fort Bliss near El Paso, Texas.  Plaintiff and her husband moved to Texas in 2007 and lived there

until November 2012, at which time plaintiff moved back to Kansas and subsequently obtained her divorce from Eric.

24.     Between 2007 and 2012, the couple lived at two addresses during their time in Texas:  1801-A Artillery Road, El Paso, Texas; and 4409 Christenson Circle, El Paso, Texas.

25.     As shown above, plaintiff did not live in the State of Kansas during 2011.

### C.   The First Attempted Suit

26.     The defendant law firm first filed a suit against plaintiff on the alleged debt on July 27, 2009.  The suit was Case Number 2009-LM-14208 and was filed in the Court of Limited Actions of Shawnee County, Kansas.

27.     The Petition alleged that plaintiff "may be served with certified mail service at 1801 A Artillery Road, El Paso, El Paso County, TX 79906."

28.     The Petition alleged that plaintiff was indebted to "Stormont-Vail Regional Healthcare" in the principal amount of $1,542.11.

29.     Between July and December 2009, the defendant law firm obtained at least 3 summonses and allegedly attempted to serve plaintiff with all of them via certified mail at the above-stated address on Artillery Road in El Paso, Texas.  Each was returned unclaimed.

30.     On February 1, 2010, the Court issued a show cause order indicating the lawsuit would be dismissed for failure to prosecute.

31.     By May 1, 2010, no cause had been shown, so the Court dismissed the first lawsuit. The docket bears a notation that the "case is not to be reinstated."

32.     Plaintiff was never contacted by the defendant law firm about the alleged debt prior to the time the defendant law firm filed the suit, and plaintiff was never served with process in this

{3227/01024063.DOCX}

first suit.  Plaintiff therefore had no knowledge of the suit or of the alleged debt at that time, and plaintiff did not find out about it until the events of December 2015 described below.

### D.  The Second Attempted Suit

33.     On May 26, 2011, a year after the first suit was dismissed and while plaintiff still lived in El Paso, Texas unaware of the alleged debt, the defendant law firm caused a second lawsuit to be filed against plaintiff for the same alleged debt.  The second suit was Case No. 2011-LM-11422 and was again filed with the Court of Limited Actions of Shawnee County, Kansas.

34.     The second lawsuit was substantively identical to the first lawsuit, including the named party plaintiff, the alleged debt which contained no details other than the alleged amount, and the same alleged address for plaintiff on Artillery Road in El Paso, Texas.

35.     The Court issued a first summons to Courtney Bevan, and the defendant law firm again attempted to serve plaintiff via certified mail at the address at 1801 Artillery Road in El Paso, Texas.  That summons was returned unclaimed, and a return was filed in the second suit on June 15, 2011.

36.     On July 8, 2011, an attorney with the defendant law firm filed an affidavit with the Court asserting that the Department of Defense Manpower Data Center Military Verification website indicated that neither Courtney Bevan nor her husband Erick Amack were active members of the military.  But this was false; Eric Amack was active military at that time, and the website showed it.

37.     Not only was plaintiff's husband still active military at that time, but they did not live in Kansas; rather, they still lived in El Paso, Texas near Fort Bliss.

38.     Nevertheless, the defendant law firm then began to issue a series of false and incorrect alias summonses as to the plaintiff, to be served in Kansas, as follows:

      a.     July 14, 2011, issued as to 8842 Sycamore Lane, Ozawkie, Kansas, from an allegation that she was employed there; this was returned unserved on July 22, 2011.

      b.     August 22, 2011, issued as to 8842 Sycamore Lane, Ozawkie, Kansas; this was returned unserved on August 24, 2011 with a note that the plaintiff was "not known here."

      c.     October 5, 2011, issued as to 8842 Sycamore Lane, Ozawkie, Kansas, from a sworn allegation by the defendant law firm that plaintiff was employed there; this was returned unserved on October 14, 2011.

39.     In relation to these failed attempts to serve process at an address where plaintiff did not live and had never lived since 2001, on at least August 9, 2011 and September 29, 2011, an attorney working for the defendant law firm filed affidavits with the Court of Limited Actions, advising that the defendant law firm had "a good faith believe" that plaintiff was employed in Ozwakie, Kansas – despite the fact the plaintiff was actually living in El Paso, Texas.  These representations in the affidavits by the defendant law firm were false and incorrect.

40.     On November 9, 2011, the defendant law firm requested another alias summons as to the plaintiff – this time requesting "service by tacking" at her alleged residence.  An attorney with the defendant law firm told the Court that the "service by tacking" should occur at 3644 S.W. Clare Ave., in Topeka -- notwithstanding the plaintiff had been living in El Paso, Texas since 2007, and was still living there at the present time, and notwithstanding that the plaintiff had not lived at the referenced address since 2007.

41.     This time, the defendant law firm did not file a praecipe for summons seeking the attempted residential service by tacking, and the return of service that was ultimately filed with the Court of Limited Actions was unsigned.

42.     Prior to the attempted "service by tacking," the defendant law firm had not made any legitimate efforts to serve the plaintiff or a person of suitable age and discretion on her behalf, at any residence actually occupied by the plaintiff, either in Kansas or outside of Kansas.

43.     The use of "service by tacking" was inappropriate both as to using that method of service at the time, and as to the address where it was tacked.  The defendant law firm knew this or reasonably should have known it.  The improper method of attempted service of process was made solely to procure a service of process which the attorney knew would be insufficient but which would let the attorney "paper the file" with a service of process to allow them to try to obtain a default judgment without Due Process of law.

44.      On November 17, 2011, a return of service was filed indicating that the alias summons had been tacked at the address and that the plaintiff was thereby served effective November 15, 2011.  The defendant law firm caused that wrongful, incorrect service of process to be pursued and therefore caused the return to be filed.

45.     On December 16, 2011, after the "residential service by tacking" at an address plaintiff did not live at and where the defendant law firm knew she did not live or with ordinary care could and should have known she did not live, the defendant law firm then obtained a default judgment against the plaintiff.  The judgment was in the principal amount of $1,542.11 (the alleged debt referenced in the Petition), plus prejudgment interest at 10% running from December 8, 2006, plus post-judgment interest running at 12%.

46.     The defendant law firm still did not contact the plaintiff about the alleged debt or about the default judgment it had now obtained.  Plaintiff still did not live in the state of Kansas at the time of the default judgment, and had not lived in Kansas for over four years.  Plaintiff did not

9

learn about the lawsuit or the default judgment until she was served with garnishment attempts in December 2015.

### E.   The 2015 Garnishment

47.     After obtaining the default judgment in the second lawsuit, the defendant law firm began issuing attempted garnishments against the plaintiff through alleged employers, seeking to obtain payment on the default judgment.

48.     Initially, the defendant law firm issued a garnishment on January 11, 2012 to the 8842 Sycamore Lane address in Ozawkie, Kansas, presumably from the same wrong allegation that plaintiff was "employed there."  The garnishment requested $2,497.31.  But plaintiff was not employed there and did not live there.  The garnishment went unanswered.

49.     The defendants let the default judgment sit idle for nearly four years at that point. Plaintiff heard nothing about the judgment during that time and was not contacted by the defendant law firm during that time.

50.     Then, on December 2, 2015, the defendant law firm issued another garnishment to attempt to collect the default judgment against the plaintiff.   This garnishment was issued to plaintiff's employer at the time, Geary Community Hospital, in the amount of $3,330.41.

51.     By this time, plaintiff had moved back to Kansas and was now working in Kansas. Therefore, the garnishment the defendant law firm issued did reach her employer, and her employer began wage withholding based on the garnishment papers.

52.     This wage withholding was the first time the defendant law firm had served any papers to an address currently associated with the plaintiff and was the first time when the legal papers actually reached the plaintiff.  But the garnishment was based on defective and insufficient service of process, which had been based on the above-described long and continuing series of

10

improper and wrongful representations by the defendant law firm to the Court of Limited Actions of Shawnee County.  It was also based on a default judgment which was void due to the lack of service of process on the plaintiff.  It was also based on an alleged debt that had never been explained in any detail to the plaintiff.

53.     The defendants collected nine wage garnishment payments from the plaintiff in the total amount of the alleged value of the default judgment at that time, totaling at least $1,073.67. In addition, each time a garnishment withholding occurred, plaintiff's employer charged her $20.

### F.  Plaintiff's 2015 and 2016 Attempted Contacts with the Defendant Law Firm About Its Wrongful Collection Efforts

54.     Upon finally receiving notice that her paycheck was being garnished by the defendant law firm as a result of its December 2, 2015 garnishment filings, plaintiff began attempting to contact the defendant law firm to ascertain any information or details about the alleged debt and the garnishment payments being withheld from her paycheck.

55.     Plaintiff first contacted the defendant law firm on December 16, 2015 after receiving word of the garnishment from her employer.  She inquired about the alleged debt and why her ex-husband was not being pursued.  Plaintiff explained she had never been served with process on this lawsuit.  The defendant law firm only told plaintiff they had a default judgment against her, and they provided some information about a different alleged debt that they had filed suit against her on in a third limited actions lawsuit (Case No. 201-LM-11074 in Shawnee County, Kansas).  The defendant law firm did not provide any information to plaintiff about the alleged debt on the second lawsuit at issue herein.

56.     On January 15, 2016, plaintiff called the defendant law firm again to follow up on information about the alleged debt and their on-going garnishment of it.  The defendant law firm said they would mail information about the alleged debt to the plaintiff, but it did not.

57.     In March 2016, plaintiff contacted the defendant law firm four more times as the garnishments were continuing to be taken from her paycheck on the alleged debt.  She continued to ask for information about the alleged debt, how she was allegedly served with process, and the default judgment.  No substantive information was given to plaintiff about the garnishment, the default judgment, the alleged underlying debt, or the defendant law firm's on-going collections process.

58.     During her final attempted call with the defendant law firm on March 21, 2016, plaintiff was told the underlying debt had originated on December 10, 2004.  Plaintiff asked the individual she was speaking to whether there was a statute of limitations on a debt that old, and she was told no there is no statute of limitations on debt.  The defendant law firm also told the plaintiff they could refile the same case repeatedly, even if it had been previously dismissed, in order to try to collect a debt.

59.     Finally, without any information on the garnishment or the debt, plaintiff felt compelled to obtain legal counsel.

60.     Even with legal counsel involved on her behalf, information was slow-coming from the defendant law firm.

61.     Plaintiff has therefore now engaged undersigned counsel to contest the violations of federal and state law (statutory and common law) by the defendant law firm in its misuse of the legal system, false and fraudulent statements to the Court of Limited Actions, and wrongful debt collection practices, all as supported by the facts alleged herein.

## Count I – Violations of the Federal Fair Debt Collection Practices Act
## (15 U.S.C. § 1692, *et seq.*)

62.     Plaintiff incorporates by reference all previous allegations set forth above, as though fully set forth herein.

63.     The above-described transactions and communications between the parties fell under and are governed by the FDCPA, 15 U.S.C. § 1692, *et seq.*

64.     The plaintiff is a natural person who has been harmed by violations of the FDCPA, and is a "consumer" within the meaning of the FDCPA, including 15 U.S.C.A. §§ 1692a(3) and 1692(d).

65.     Based on the allegations pleaded by the defendant law firm in the first and second lawsuit, there was an alleged "debt" at issue arising out of a transaction entered primarily for personal, family, or household purposes, pursuant to the FDCPA, including 15 U.S.C.A. § 1692a(5).

66.     The defendant was collecting the alleged debt and is a "debt collector" within the meaning of the FDCPA, including 15 U.S.C.A. § 1692a(6).

67.     The defendant violated, by acts and/or omissions, provisions of the FDCPA, including but not limited to 15 U.S.C.A §§ 1692a-1692o, by the unfair and misleading acts and omissions set forth in this pleading.

68.     Plaintiff therefore brings this cause of action against defendant pursuant to 15 U.S.C.A. §1692k and other related provisions.

69.     Defendant is aware of the FDCPA and its requirements, or should be, and has an obligation to adequately train and supervise its owners, agents and employees in the FDCPA and how to conduct themselves in their communications with alleged debtors like the plaintiff.

{3227/01024063.DOCX}

70.     Defendants failed in these duties as well, thereby further violating the FDCPA. Alternatively, the defendants' agents and employees knowingly violated their duties to the plaintiffs under the FDCPA and ignored their training and supervision.

71.     Based on the defendant law firm's substantial presence as a debt collector in the Shawnee County area, including through its substantial presence in and use of the Court of Limited Actions in Shawnee County, plaintiff reasonably believes and therefore alleges on information and belief that the type of violations she experienced at the hands of the defendant law firm are probably more common and have occurred in relation to other debtors than just herself.  Plaintiff therefore intends through discovery to determine what other instances of debt collection by the defendant law firm have used the same or similar violations of federal law.

72.     As a direct and proximate result of the defendant's violations of the FDCPA, plaintiff sustained actual damages, including but by no means limited to the lost value of her money while it was being wrongfully garnished, her attorney's fees for having to deal with the problems, her time spent having to deal with the problems created by defendant's statutory violations, and her emotional distress in having to go through these issues without information from the defendant law firm about what was happening or why it had happened.  Plaintiff is entitled to recover all actual damages under the FDCPA, including 15 U.S.C. § 1692k.

73.     In addition, plaintiff is entitled to a statutory civil penalty or penalties in the amount of at least $1,000, if not more, pursuant to 15 U.S.C. § 1692k(a).

74.     Defendants Stormont-Vail are liable for these actions as pleaded above, whether through *respondeat superior* liability or by virtue of authorizing or ratifying the wrongful conduct.

75.     Defendants are also liable to pay attorney's fees to the plaintiff, pursuant to 15 U.S.C. § 1692k.

14

WHEREFORE, plaintiff prays for money judgment against the defendants in an amount in excess of $75,000, as set forth above and/or as will be proven at trial, for her attorneys' fees in addition, for the costs and expenses of this action, and for all other relief against the defendants allowed by the FDCPA and/or deemed appropriate by the Court.

## Count II – Violations of the Kansas
## Consumer Protection Act (K.S.A. § 50-623, *et seq.*)

76.     Plaintiff incorporates by reference all previous allegations set forth above, as though fully set forth herein.

77.     Plaintiffs is a "consumer" as well as a "person" under the KCPA (K.S.A. § 50-623, *et seq.*).  K.S.A. § 50-624(b) and (i).

78.     The defendants are "suppliers" under the KCPA.  K.S.A. § 50-624(1).

79.     The defendants provided "services" to the plaintiff in relation to a "consumer transaction" under the KCPA.  K.S.A. § 50-624(c) and (k).

80.     The KCPA applies to and governs the defendants' duties and obligations as to their dealings with the plaintiff.

81.     As demonstrated and supported by the factual allegations pleaded above herein, the defendants and/or their respective authorized and ratified agents violated the KCPA as to the plaintiff by committing various deceptive acts and practices, in violation of K.S.A. § 50-626, and/or unconscionable acts and practices, as forbidden by K.S.A. § 50-627.

82.     Without limiting the number of violations in any respect, defendant's violations of the KCPA as to the plaintiff include at least the following:

a.  Filing the second lawsuit against the plaintiff in Kansas and representing to the Court of Limited Actions that it was possible to serve the plaintiff in Kansas, despite having made numerous attempts previously to serve the plaintiff in the State of Texas;

15

b.  Falsely representing to the Court in the second lawsuit that the plaintiff and her husband were not active in the military and could not be located;

c.  Making multiple attempts to serve process to the plaintiff at addresses known to be false and/or where the plaintiff did not live;

d.  Purportedly obtaining service of process by residential tacking at an address in Kansas where the defendants knew or should have knowing with minimal effort the plaintiff had not lived for at least ten years, at a time when defendants knew or reasonably should have known the plaintiff was not even living within the State of Kansas;

e.  Obtaining a default judgment against the plaintiff through the wrongful "service by tacking";

f.  Causing wage garnishment process to issue on the default judgment against the plaintiff, at a time when the plaintiff had never been validly served with process and was not even aware of the underlying debt, suit or judgment;

g.  On information and belief, failing to issue notice to the alleged debtor, plaintiff, about the issuance of the wage garnishment in December 2015;

h.  Collecting wage garnishment on nine occasions from the plaintiff's paycheck under the wrongful garnishment circumstances described above;

i.  Failing to identify the alleged debt with any particularity in the lawsuits;

j.  Failing to provide plaintiff with information about the debt on the multiple times when she asked for it; and,

k.  Failing to reverse, or even take any action to review after plaintiff had complained, any of its wrongful actions toward the plaintiff until plaintiff had been required to retain the services of an attorney.

83.  Plaintiff is entitled to bring this private civil cause of action against defendant for the multiple violations at issue, pursuant to K.S.A. § 50-634(b).

84.  Plaintiff sustained damages (as set forth above) as a direct and proximate result of defendants' conduct in violation of the KCPA and is entitled to recover them pursuant to K.S.A. § 50-634(b).

16

85.     Plaintiff is also entitled to recover civil penalties based on the defendants' violations of the KCPA, including a civil penalty of $10,000 per violation as described above, and others as may be proven at trial, pursuant to K.S.A. § 50-636.

86.     Based on the defendant law firm's substantial presence as a debt collector in the Shawnee County area, including through its substantial presence in and use of the Court of Limited Actions in Shawnee County, plaintiff reasonably believes and therefore alleges on information and belief that the type of violations she experienced at the hands of the defendant law firm are probably more common and have occurred in relation to other debtors than just herself.  Plaintiff therefore intends through discovery to determine what other instances of debt collection by the defendant law firm have used the same or similar violations of the KCPA.

87.     Defendants are liable to pay attorney's fees to plaintiff, pursuant to K.S.A. § 50-634(e).

88.     Defendants are liable to pay plaintiff the costs and expenses of the action, and prejudgment interest on these claims.

89.     Defendants are liable to pay plaintiff any and all other monetary relief allowed by the KCPA.

WHEREFORE, plaintiff prays for money judgment against the defendants in an amount in excess of $75,000, as set forth above and/or as will be proven at trial, for her attorneys' fees in addition, for the costs and expenses of this action, and for all other relief against the defendants allowed by the Kansas Consumer Protection Act and/or deemed appropriate by the Court.

## Count III – Abuse of Process

90.     Plaintiff incorporates by reference all previous allegations set forth above, as though fully set forth herein.

17

91.     The previously-stated facts demonstrate that the defendant law firm, and therefore the hospital defendants, as alleged previously, abused the legal process toward the plaintiff, to the detriment of the plaintiff.

92.     The defendant law firm repeatedly misrepresented the addresses and whereabouts of the plaintiff to the Court of Limited Actions, also including that her location was unknown and/or undeterminable at any time.

93.     The defendant law firm issued process for residential service of process "by tacking" despite knowing or failing to take reasonable actions to determine that the plaintiff did not live at the address where the tacking occurred, at a time when the plaintiff was not even located in the State of Kansas.  It also appears the procedure for service by tacking was not followed.

94.     The defendant law firm obtained a default judgment based on the known improper "service by tacking."

95.     The defendant law firm then caused one or more garnishments to issue against the plaintiff's wages.  The garnishments were wrongful in that the underlying lawsuit had not been properly served on the plaintiff making the alleged default judgment therefore void and unenforceable, yet the defendant law firm caused garnishment to issue on it anyway.  In addition, on information and belief the plaintiff was not provided timely notice of the attempted initial garnishment.

96.     As a direct and proximate result, the plaintiff sustained actual damages as set forth above.

WHEREFORE, plaintiff prays for money judgment against the defendants in an amount in excess of $75,000, as set forth above and/or as will be proven at trial, for the costs and expenses of this action, and for all other relief against the defendants allowed at law and by the Court.

18

## **Count IV – Fraud**

97.     Plaintiff incorporates by reference all previous allegations set forth above, as though fully set forth herein.

98.     The defendant law firm made false statements to the Court of Limited Actions in the process of pursuing the default judgment and garnishment of the plaintiff.

99.     The false statements are as specifically described above herein, in paragraphs 36, 37, 38, 39, 40, 42, 43, 45, 56, 57, and 58.

100.     Defendant law firm made the false statements intentionally, and/or with reckless disregard to the truth of the statements or to the consequences the statements would have on the plaintiff.

101.     Alternatively, defendants made the statements and negligently failed to ascertain or attempt to ascertain their truth or accuracy before making them.

102.     Not only did the defendant law firm have a duty to the plaintiff generally not to make such false statements, but further owed a duty to the plaintiff not to make them by virtue of being officers of the Court.

103.     The Court of Limited Actions relied on the false statements of the defendant law firm in issuing the summons for residential service by tacking on the plaintiff; then in obtaining the default judgment; then in allowing the wage garnishment to issue in December 2015.

104.     The false statements detrimentally harmed the plaintiff, and as a direct and proximate result of them, the plaintiff sustained actual damages as set forth above.

105.     The hospital defendants are liable for the actions of the law firm as pleaded previously, to the extent they authorized and/or ratified the conduct.

19

{3227/01024063.DOCX}

WHEREFORE, plaintiff prays for money judgment against the defendants in an amount in excess of $75,000, as set forth above and/or as will be proven at trial, for the costs and expenses of this action, and for all other relief against the defendants allowed at law and by the Court.

Respectfully submitted,


_____/s/ Andrew M. DeMarea_____

Andrew M. DeMarea                KS#16141
Kenner Nygaard DeMarea Kendall, LLC
117 W. 20th St., Suite 201
Kansas City, MO 64108
(816) 531-3100
(816) 531-3600 fax
andy@kndklaw.com

ATTORNEY FOR PLAINTIFF

20

## **CERTIFICATE OF SERVICE**

Undersigned counsel hereby certifies that a true and accurate copy of the foregoing Complaint is being served via U.S. Mail, first-class and postage prepaid, pursuant to K.S.A. 50-634(g), on this __29th__ day of November, 2016, addressed to:

Hon. Derek Schmidt
Office of the Kansas Attorney General
ATTN:  Consumer Protection Division
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612

　　　　　　　　　　　　　　　　　　___/s/ Andrew M. DeMarea_____
　　　　　　　　　　　　　　　　　　Counsel for Plaintiffs

21

{3227/01024063.DOCX}